IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYLVESTER A. CALLAHAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 13 C 2979 ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) Magistrate Judge Finnegan ) ) ) |
| Defendant. | ) |

## ORDER

Plaintiff Sylvester A. Callahan seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 416, 423(d), 1381a. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and after careful review of the record, the Court now remands the case for further proceedings.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on August 27, 2009, alleging in both applications that he became disabled on August 27, 2008 due to lupus, fibromyalgia and depression. (R. 139, 142, 149). The Social Security Administration denied the applications initially on October 7, 2009, and again upon reconsideration on March 24, 2010. (R. 82-96). Plaintiff filed a timely request for hearing and appeared before Administrative Law Judge Robert T.

Karmgard (the "ALJ") on November 16, 2010. (R. 30). The ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from vocational expert William M. Newman. Shortly thereafter, on March 25, 2011, the ALJ found that Plaintiff is not disabled because there are a significant number of light and sedentary jobs he can perform. (R. 16-23). The Appeals Council denied Plaintiff's request for review, (R. 5-8), and Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

In support of his request for remand, Plaintiff argues that the ALJ (1) made a flawed credibility determination; (2) provided no basis for the residual functional capacity ("RFC") assessment for light and sedentary work; and (3) failed to properly evaluate whether he met Listing 14.02. Plaintiff also claims that the Appeals Council erred in concluding that new evidence he submitted after the administrative hearing did not warrant reversal. As discussed below, the Court agrees that the ALJ's credibility finding is patently wrong, and that the case must be remanded for further consideration of this issue.

## FACTUAL BACKGROUND

Plaintiff was born on September 5, 1969, and was 41 years old at the time of the ALJ's decision. (R. 139). He completed high school and spent approximately 17 years doing shipping and receiving work for the ULINE company. (R. 45, 150). Most recently, Plaintiff worked for two years as a loader at Walmart, but he had to quit on August 27, 2008 due to constant pain. (R. 43).

**A.     Medical History**

On August 28, 2008, Plaintiff started seeing Gerald Gamalski, M.D., of Deerpath Physicians Group ("Deerpath") for joint pain in the fingers, elbows, shoulders, knees and ankles, and significant swelling in the hands. Dr. Gamalski thought Plaintiff could have a rheumatologic problem such as rheumatoid arthritis or systemic lupus erythematosus ("SLE"), and he ordered a series of related tests and prescribed the steroid prednisone. (R. 235-37). At a follow-up visit on September 5, 2008, Plaintiff still had "quite a bit of pain" in his joints but the swelling had "much improved" and he was feeling "better overall." (R. 233). Dr. Gamalski noted that the testing had confirmed the presence of a rheumatologic or autoimmune process and ordered an SLE panel for further evaluation. He also increased the dosage of prednisone and referred Plaintiff to a rheumatologist. (R. 234).

A week later, on September 12, 2008, Plaintiff saw Chinyoung Park, M.D., of Park Rheumatology. He complained of insomnia, morning stiffness, fatigue, stress, photosensitivity, weight loss and chest pain, and Dr. Park observed that Plaintiff had tenderness in the shoulders; swelling and tenderness in the right wrist; left elbow contracture; and synovial (joint lining) thickening in both hands. Dr. Park administered a steroid injection in Plaintiff's right wrist, prescribed Plaquenil (a drug for lupus/autoimmune diseases), and instructed him to return in one month. (R. 243-44).

Plaintiff next had a follow-up visit with Dr. Gamalski on October 10, 2008. Overall, he was "greatly improved" with reduced pain and swelling in many joints,

but he still complained of "quite a bit of pain" in the right ankle, right shoulder and right elbow. Dr. Gamalski diagnosed SLE, and prescribed Norco for pain. (R. 231-32). When Plaintiff saw Dr. Park the following week on October 17, 2008, he continued to exhibit elbow contracture with mild synovial thickening, and his toes were "pulled up on the right due to exterior tendon contractures." Dr. Park diagnosed SLE and fibromyalgia, prescribed Elavil (a mood stabilizer), and encouraged Plaintiff to do some swimming exercises. He also noted that Plaintiff's "[s]ubjective complaints of pain [were] disproportional to the exam." (R. 249-50).

Over the next two years, Plaintiff was hospitalized three times due to chest pain and once because of a severe headache. While at Vista Medical Center East ("Vista Medical") between December 22 and 24, 2008, Plaintiff was diagnosed with pleural effusion (excess fluid around the lungs) and cardiomegaly (an enlarged heart). (R. 221, 227). During a second admission to Vista Medical from July 31 to August 2, 2009, he was diagnosed with acute cephalgia (headache), possibly secondary to a migraine, and noncompliance with his lupus medications. (R. 315). Plaintiff applied for disability benefits later that same month on August 27, 2009. Shortly thereafter, on October 6, 2009, Barry Free, M.D., found that Plaintiff is not disabled from lupus, noting that during his August 2009 hospital stay, he exhibited "a completely unremarkable" review of symptoms with no fever, chills, weight loss, sore throat, coughing, sputum production, chest pains, palpitations, abdominal pains, nausea, vomiting, or weakness in the arms and legs. (R. 332).

Plaintiff's third hospitalization from March 7 to 13, 2010 was for acute shortness of breath and right lower chest wall pain lasting two days. (R. 349). At the time of discharge he was in stable condition with a diagnosis of lupus exacerbation, lupus arthritis, polyserositis, pleural effusion, right-sided chest pain, and paroxysmal atrial fibrillation. (R. 347). On March 23, 2010, less than two weeks after Plaintiff's release from the hospital, Francis Vincent, M.D., affirmed Dr. Free's finding of no disability. (R. 338).

The final hospitalization at Vista Medical was from October 3 to 5, 2010, again due to chest pain with productive cough lasting several weeks. (R. 379). An echocardiogram showed mildly dilated left atrium and small pericardial effusion, but a chest CT scan revealed no evidence of acute cardiopulmonary process. (R. 388, 392). Plaintiff was discharged with medication. (R. 379). Thereafter, on December 21, 2010, Plaintiff had a physical therapy evaluation at Vista Medical showing decreased range of motion in the elbows hips and ankles; 3-/5 strength in the hips and hamstrings; 3+/5 strength in the quads; decreased musculoskeletal endurance and core strength; and hypersensitivity on the plantar surfaces of both feet. (R. 398).

**B.    Plaintiff's Testimony**

At the November 16, 2010 hearing before the ALJ, Plaintiff testified that he has lost 40 to 50 pounds since August 2008 (R. 39-40); he cannot fully extend his arms, which are stuck in an L-shape (R. 42); he does not clean, vacuum, mop or sweep, but can sit and fold clothes (R. 47); he can walk a two-block round-trip to the corner store to buy fruit and vegetables but otherwise does not shop (R.

5

47-48); he reads and watches a lot of television (R. 48-49, 56); he experiences constant pain every day that rotates around his knees, arms, hips, shoulders and feet (R. 50-51); he can walk for 10 or 15 minutes at a time (R. 52); he gets winded and his heart pounds when he walks too fast (R. 46-47, 52); he uses a cane but has trouble holding it at times due to pain in his hands; (R. 53); he cannot lift a gallon of milk (*id.*); he can stand for 20 to 30 minutes and sit for about 45 to 60 minutes at a time (R. 55); he soaks in a bathtub twice a day for 40 minutes to relieve pain (R. 56); he has trouble getting dressed (R. 57); he had passed out and fallen due to dizziness four or five times the previous year (R. 58-60); and he takes five Vicodin pills a day for pain about five days per week. (R. 63).

## C.  Administrative Law Judge's Decision

The ALJ found that Plaintiff's SLE and history of atrial fibrillation are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 14.02 (relating to SLE). (R. 34-40). After reviewing in detail Plaintiff's testimony and the medical records, the ALJ determined that he has the capacity to perform light work with the following restrictions: he can frequently lift and carry 10 pounds; occasionally lift and carry 20 pounds; sit, stand or walk for up to 6 hours in an 8-hour workday with normal work breaks; never climb ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; but he must avoid exposure to hazards and dangerous machinery. (R. 19-20). The ALJ explained that this RFC "is reasonable in light of the fact that

6

[Plaintiff] has non-severe lupus." (R. 21). He also rejected Plaintiff's testimony to the extent it was inconsistent with the RFC. (R. 22).

From there, the ALJ accepted the VE's testimony that Plaintiff remains capable of performing a significant number of unskilled light and sedentary jobs available in the national economy, including cashier (136,900 jobs available), cafeteria attendant (30,000 jobs available), housekeeper/cleaner (30,000 jobs available), food/beverage order clerk (12,600 jobs available), sorter (6,800 jobs available), and assembler (19,600 jobs available). (R. 18). The ALJ thus concluded that Plaintiff is not disabled within the meaning of the Social Security Act, and is not entitled to benefits.

## **DISCUSSION**

### A.  Standard of Review

Judicial review of the Commissioner's final decision is authorized by Section 405(g) of the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court's task is to determine whether the ALJ's decision is supported by substantial evidence, which is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Skinner*, 478 F.3d at 841).

In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## B.  Five-Step Inquiry

To recover DIB or SSI under Titles II and XVI of the Social Security Act, a claimant must establish that he is disabled within the meaning of the Act. *Keener v. Astrue*, No. 06-CV-0928-MJR, 2008 WL 687132, at *1 (S.D. Ill. Mar. 10, 2008).[1] A person is disabled if he is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Crawford v. Astrue*, 633 F. Supp. 2d 618, 630 (N.D. Ill. 2009). In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry: (1) Is the claimant presently unemployed? (2) Is the

---

[1]  The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq.*, and are virtually identical to the SSI regulations set forth at 20 C.F.R. § 416.901 *et seq.*

8

claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. §§ 404.1520, 416.920; *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

C.  **Analysis**

Plaintiff claims that the ALJ's decision must be reversed because he (1) made a flawed credibility determination; (2) provided no basis for the RFC assessment for light and sedentary work; and (3) failed to properly evaluate whether he met Listing 14.02. Plaintiff also claims that the Appeals Council erred in concluding that new evidence he submitted after the administrative hearing did not warrant reversal.

1.  **Credibility Determination**

Plaintiff argues that the ALJ did not properly evaluate his credibility as required by SSR 96-7p. (Doc. 16, at 9). In assessing a claimant's credibility, an ALJ must first determine whether the symptoms are supported by medical evidence. *See* SSR 96-7p, at *2; *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold*, 473 F.3d at 822. *See also* 20 C.F.R. § 404.1529; *Carradine v. Barnhart*, 360 F.3d

751, 775 (7th Cir. 2004). Because hearing officers are in the best position to evaluate a witness's credibility, their assessment should be reversed only if "patently wrong." *Castile*, 617 F.3d at 929; *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

The ALJ provided a very detailed recitation of Plaintiff's testimony, followed by a very detailed recitation of the medical evidence of record. (R. 20-22). He then stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the" stated RFC assessment. (R. 22). The Seventh Circuit has repeatedly criticized this template as "unhelpful" and "meaningless boilerplate," noting that the "hackneyed language seen universally in ALJ decisions adds nothing" to a credibility analysis. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). *See also Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (the template "implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards.").

To be sure, the use of boilerplate language will not alone provide a basis for remand as long as "the ALJ said more" and gave reasons for not finding the plaintiff's testimony fully credible. *Richison v. Astrue*, 462 Fed. Appx. 622, 625 (7th Cir. 2012) (no error where ALJ used boilerplate language but then went on to question the plaintiff's testimony about resting and napping all day "given that he went hunting and apparently attempted to work on his car."). Here, however,

the ALJ said nothing more and failed to explain which of Plaintiff's statements he did not credit. Defendant stresses that the ALJ "based his finding, in large part, on the absence of objective medical evidence supporting [Plaintiff's] claims." (Doc. 20, at 6). This was certainly a relevant consideration, as "[t]he discrepancy between the degree of pain attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Of course, the ALJ never actually said that Plaintiff was exaggerating his symptoms or that he was discounting Plaintiff's testimony on that basis. Moreover, it is well-established that an ALJ cannot rely "solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). Yet Defendant points to no other factors the ALJ considered in rejecting Plaintiff's testimony.

Defendant attempts to remedy the situation by citing the following legal propositions: (1) a claimant cannot "nitpick the decision for inconsistencies or contradictions," (Doc. 20, at 7) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)); and (2) ALJs are "not obliged to believe all [of a claimant's] testimony" but are "free to discount" it based on "the other evidence in the case." (*Id.* at 6-7) (quoting *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006)). Such generic statements, absent any explanation as to how the ALJ affirmatively satisfied the requirements of SSR 96-7p, are wholly inadequate to avoid a remand. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)

11

(SSR 96-7p requires that an ALJ provide "specific reasons" for his credibility finding).

It is entirely possible that on remand, the ALJ will once again conclude that Plaintiff's allegations are not fully credible. Indeed, Dr. Park noted at one point that Plaintiff's "[s]ubjective complaints of pain [were] disproportional to the exam." (R. 249-50). Regardless, the ALJ's failure to articulate any rationale for his credibility determination aside from documenting a lack of objective evidence was patently wrong, and the case must be remanded for proper consideration of this issue.

### 2. Remaining Arguments

In addition to reconsidering the credibility finding, the ALJ should also take the opportunity on remand to better explain why Plaintiff did not meet Listing 14.02, and to consider whether the December 2010 physical therapy assessment has any impact on the outcome of the case. The Court need not otherwise address Plaintiff's remaining arguments.

### **CONCLUSION**

For the reasons stated above, Plaintiff's motion to reverse the ALJ's decision is granted, and Defendant's Motion for Summary Judgment (Doc. 19) is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is

reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: May 19, 2014

_____
SHEILA FINNEGAN
United States Magistrate Judge